is Mr. Hernandez versus the Sheriff of Manatee County. That's case number 24-10011. Whenever you're ready, counsel, may it please the court. First of all, thank you for your accommodation of my scheduling issues today. I really appreciate it. We understand counsel and thank you to my prior counsel as well. My name is Matthew Farmer. I represent Nicholas Hernandez. In an interesting case, I'm not sure if Mr. Hernandez is the luckiest person around or the unluckiest person. The sense there is he's unlucky to the extent that he was arrested. Some people make their own luck, though. You agree with that? I do agree with that. Is Mr. Hernandez one of those folks who makes his own luck? Well, perhaps. Eight arrests, eight null process. We're here on four of those arrests. We have four Fourth Amendment claims that were dismissed on the basis of qualified immunity at the motion to dismiss stage. We have here a case where we see the tension between the notice pleading standards of Rule 8A2 and the Randall v. Scott decision in which this court's ruled that there's no heightened pleading standards. There's one other aspect to that. You're certainly right that we no longer can and should impose a heightened pleading standard, but the Iqbal and Twombly line of cases do require plausible allegations. I think that's where we need to focus ourselves on. Maybe just go through what you think the best count is for why you've alleged a plausible claim. Let's start there. All right. Let me start with the third arrest. The defendant in that case was Deputy Riley. Right. As I understand, just to lay out the facts very quickly, as I understand it, Deputy Riley makes an arrest based on the prior arrest warrant for some people call it Dwillis, driving while license suspended. I've heard it different ways. There had been a warrant filled out by another officer for that. Officer Riley or Deputy Riley comes and effectuates the arrest there. Your client says to Deputy Riley, that charge was already abandoned. There is alleged to be a resisting at that point. Deputy Riley then arrests him for resisting without. Resisting without charges are filed, but ultimately all charges are dropped related to that. Did I lay out the facts correctly? It does, Your Honor. Thank you. So our law says that where a second officer relies on a warrant filled out, otherwise facially valid warrant by a first officer, that the second officer generally can't be liable. They're allowed to rely on that, right? That's true in the first instance. Right. So if there's a warrant and an arrest based on that warrant, certainly it would be reasonable to rely on the predecessor officer. Here we have another link in the chain. The link in the chain is that the affiant was Deputy Santana. He filled out a probable cause affidavit. There was an arrest on that affidavit. What we have here is a second arrest on the same warrant that originated in the same affidavit. We have the additional information that that case not only no longer had a pending warrant, that case had already been disposed of. Show me where the allegations say there's no pending warrant at that point. Because that's where I think, as I understand it, the way it is, the charge was he was arrested in the first instance by, I think it's Deputy Santana. Yes. Deputy Santana, there's a dropping of the charges. And then Deputy Riley arrests really like a week or two later, as I understand it, after charges were dropped on the same warrant. Just one week later. Right, one week later. But I don't see any allegation which says that anyone was informed that the warrant had been withdrawn or was no longer valid. All that was told to the Deputy Riley was the charges had been abandoned previously on that charge, right? That's right. That's right. But a reasonable inference is that a reasonable officer hearing from an arrestee that not only has the warrant already been executed and an arrest been made on that warrant, but the entire substance of the case has been null-prossed. The problem is, though, for the plausibility, you have to show it's plausible that the officer knew that either there was no probable cause at all or that the warrant was invalid. And a null-pross, as you know, I know you're an experienced practitioner, can be for any number of reasons that have nothing to do with innocence or a lack of probable cause or the vitiation of a prior warrant. There's lots of reasons why things get null-prossed. Without more, how is an officer supposed to know that A, I don't have probable cause, and B, that the warrant, my computer says there's a valid warrant, I have no reason to doubt it, can't effectuate that warrant? Well, because a reasonable officer, if he hears that a case has been null-prossed, he would conclude reasonably that not only has the original warrant been executed with an arrest, but the criminal process has proceeded to a point where the case has been disposed of. So it's not as if... But null-pross doesn't mean, it's not a disposition. That's the exact opposite. It's the dismissal of charges without any disposition. Right, but once we reach that point where the state attorney's office is assessing a case and deciding whether to go forward or null-pross... Counsel, that could be for any number of reasons. I mean, a state attorney can say, you know what, a thousand cases came in this week, and we just do not have the capacity right now to charge what we deem to be a very minor offense compared to the murders and robberies and burglaries that we have to deal with. I mean, there's any number of reasons a case gets null-prossed. Right. All that is true, but a reasonable officer would conclude that there's already been an arrest. Where is that in your complaint, though? I mean, I will say, number one, the optics of this case are very, very concerning. However, we're here because of the pleading deficiencies that the district court found. Everything that you're saying about a reasonable officer and all that comes after what you just said, where is that in your complaint? Which count paragraph is that? Well, the paragraphs on the Deputy Riley count are 47 through 54. Those are the counts that relate to count seven, which also happens to be arrest number seven. Your Honor, I... Right, but no, where's the...  To do the investigation you just described, perhaps if that were in the complaint, it would get you past the motion to dismiss state. So where in the complaint is that? Your Honor, it's more in the nature of a reasonable inference based on the assertion, the allegation that an experienced officer would have a duty if he hears that not only has there already been an arrest on the same warrant, but the case has already proceeded to point at this position. Right, but Twombly, I think, again, to Judge Luck's point, doesn't require, especially the district court, to make that leap. It's supposed to be in the complaint. So it sounds like you're making the concession that you will rely more on inference from the allegations as opposed to the specificity of your allegations. I am. Reasonable inferences, which under Twombly and Iqbal are also relevant for the plausibility analysis, which is ultimately the test here. Here's what we've said regarding the situation of dismissed charges or null pros. We said, quote, unilateral dismissal by the prosecutor of, in that case it was drug charges, does not constitute conclusive proof of the defendant's innocence. We've also said that certainly we cannot attribute the government's decision not to prosecute to an independent determination that the defendant is not guilty because there are many factors that influence the decision. And the Supreme Court has also said that criminal charges can be dismissed, quote, on grounds that have nothing to do with guilt or innocence. Where that is the case, and I think that is a reasonable inference for any experienced judge in the state court system and in the federal court system who sort of deals with this day in and day out, that there isn't anything that you can do. It's possible, but is it plausible that dismissal necessarily means the two things that you've stated that are not in the complaint? Yes, Your Honor. And I do want to acknowledge that I agree wholeheartedly that that is the status of the standard currently. I would just go back, not to belabor it, but just go back to the point that if an officer hears that a case has been null pros, a reasonable officer would conclude that an arrest has already occurred because the process, a case cannot be null pros until there's an arrest made and charges are initiated. But that doesn't necessarily invalidate a warrant for arrest. It could be computer error that it's in there. But as you know, what happens is this is not, it'd be different if this was Santana who already knew all this stuff. Right. But if it's the second officer, you're looking at your computer, you see, all right, this warrant's up. I'm going to go find the guy. And he goes and finds the guy and effectuates the warrant. Your client says, I'm innocent for whatever reason. And our law has said that despite protestations of innocence, a second officer is allowed to effectuate the warrant. And so I don't know why this is different than sort of the average case of someone who's arrested saying, I'm innocent, where we have said, yes, we understand that and the criminal process will play out that way. But in terms of probable cause, that that doesn't vitiate probable cause. Well, it's just slightly different though, Your Honor. And again, I agree with your statement of the law, but it's slightly different because it's not a case in which there is a pending warrant and which is probably 99% of the scenarios, a pending warrant. There's an encounter with a police officer and most people, human nature, protest their innocence. It's a slightly different scenario only because the additional information the officer had was the claim, not only am I innocent, but my case has already been disposed of. So that would be the only... But your disposition of the case is based on the non-pros, which is not necessarily disposition. It's not a final adjudication of the case on the merit. Correct. But it would presuppose that an arrest has already been made because the non-pros would not have happened unless Mr. Hernandez had already been arrested and been through the process where the state attorney's office actually files the information and the case proceeds as normal. So that's the only additional twist in the case is that we claim a reasonable officer would know that an arrest has already been made, which would be the only issue on whether it would be a valid, warranted arrest. Thank you, counsel. Thank you. Good morning. May it please the court, Summer Baranco here on behalf of the appellees. This is... Ms. Baranco, can you address the last point that your opposing counsel made regarding the fact that the arrest had already been effectuated? Yes. The law doesn't put the onus on a deputy in real time who's dealing with, as far as he understands, there's an active warrant that is in need of being served on the individual and when he goes to serve what is seen in the computer system in every other way that it's an active warrant, goes to arrest someone on it and they claim that, well, this case is already over and it was no process or whatever Mr. Hernandez told Deputy Riley at the time because a lot of people say a lot of things. So is your argument that, I just want to understand it, is your argument that essentially this is just a variation on the claim of innocence? In other words, it's a variation on I didn't do it, this is just that I was already arrested for this thing and it's not an officer in the same way that an officer doesn't have to credit a protestation of innocence, the officer doesn't have to credit that a no process in fact had happened. Is that what you're saying? Yes, your honor. That is effectively what I'm saying. The deputy does not have to independently investigate, call the clerk's office or the state attorney's office out on the field to decide whether or not what Mr. Hernandez was claiming in the moment was in fact true. And as your honor already pointed out, as appellant's counsel was up here, that the deputies in real time, they don't have to do an independent investigation to figure out whether the plaintiff is in fact innocent or not. What we're dealing with here in this case is not even arguable, I'm sorry, not even probable cause, but only arguable probable cause. And as the trial court correctly found in looking at and analyzing the motion to dismiss, that as to these four remaining, or actually in this appeal, the only appellees, that there was not even arguable probable cause that was alleged in the operative complaint, which was an amended complaint. I think it's important to point out that the plaintiff never sought to get leave to nor did he ever point out to the court what he could do to arguably try to fix the problems with the amended complaint. And... Well, what is your position regarding opposing counsel's statement that Twombly does allow for some reasonable inference when it comes to allegations that might not be as specific? Well, Twombly does allow for reasonable inferences. However, as we've already discussed here, the fact that a charge has, even if it were true, has been null pros by state attorney's office does not mean that the warrant is invalid, does not mean that there was a finding that the individual was innocent. There's any number of And so a reasonable inference that the deputy could and did draw is that, well, the warrant is still in the system. It's still valid. I have a right, in fact, a duty to arrest this individual on the warrant. And then Mr. Hernandez can figure that all out, probably with the help of counsel and conferring with the judge to determine at that point. How many mistakes have to happen, though, before the sheriff is liable, or the sheriff's office, or the deputy? In other words, let's say this was five times that this happened. Well, Your Honor. There's an arrest, a null pros, an arrest, a null pros, an arrest, a null pros, and an arrest, a null pros. On the same warrant. On the same warrant, right. So by time five, can we, at that point, can we say, you know what, maybe there's some liability here? And I recall having this discussion with the- And I've had this discussion. Yes, with the entire, the entire en banc court in the Sosa case. Same county as I recall, too, is it not? No, Your Honor. That was Martin County. This is Manatee. Fair enough. Other side of the state. Although it does sound similar, certainly. Well, as we all know, negligence does typically not equate to a constitutional violation. Yeah, but that's, by time five, we're not talking about negligence, right? I mean, by time five, we're talking about something a little bit beyond that. This might have been negligent of not looking at your computer, taking a look at the court docket, and seeing if what he's saying is right or not, or calling Officer Santana or something. That's negligent, but you're right that that doesn't give you liability here. When, hypothetically speaking, if it was five times, perhaps. Of course, that's not what was alleged in this case, and that isn't what happened in this case. So I appreciate what you're pointing out. The only, and the only reason I bring up the hypothetical is because really what your opposing counsel has brought here is sort of a guy who's constantly being arrested in a way that doesn't appear to be prosecutable by the state attorney's office in that county or that circuit. And so, you know, how far off are we from that situation? Well, I think in a lot of scenarios, even based on the allegations of the operative complaint in this case, oftentimes it was things, evidence that came forward after the arrests that gave the state attorney's office pause in terms of whether or not they were going to spend their limited resources in terms of prosecuting Mr. Hernandez on any number of these different charges. But of course, we're here now on the four individual arrests, and it all comes back to whether or not there was arguable probable cause for each of these arrests. I know we've spent quite a bit of time speaking about the Deputy Riley's arrest of Mr. Hernandez, and I don't really want to belabor that which I've already set forth in the briefs. But certainly, again, when you're looking at the operative complaint, and as I stated a moment ago, the plaintiff had already amended once before. He didn't seek leave to amend. And so ultimately, as this court in late February of this year, in a published opinion, Miller versus Palm Beach County Sheriff's Office that I happen to be involved in as well, reminded the district court judges that the entitlement to qualified immunity raised on a motion to dismiss will, and it was italicized, will be granted if the complaint fails to allege the violation of a clearly established constitutional right. And that is frankly what the trial court judge here, when presented with eight different arrests that the court had to look through on the motion to dismiss, the judge very meticulously went through each and every one and screened out these four as not even getting past the motion to dismiss stage. And the judge didn't ask the four others, right? That's correct. The other four proceeded to summary judgment, and summary judgment was granted as to those other four defendants. So I think the court should very much look at, not get caught up in that the eight arrests, to the extent that there may be a concern to someone as to why would this gentleman be arrested eight times, I would tend to agree with Judge Luck's comment earlier today that some people make their own luck. And I think Mr. Hernandez may be one of those people. Well, that comment works both ways. Sometimes it's not the person, it's someone else that makes it for them. And, you know, there's an argument that maybe the sheriff's office has a role to play in this too. So I, my comment was not specific to Mr. Hernandez. It was specific to rarely do circumstances just happen, they happen for reasons. I understand, Your Honor. And when the, again, on a motion dismissed, looking at the allegations of the amended complaint, it's obvious that all of these different arrests that Mr. Hernandez had were over, they weren't all day, you know, one day after another. It was oftentimes months and months between the arrests. They were for... Over the course of about a year and a half, right? Correct. For completely different things, such as resisting arrest without violence, burglary with a battery on the elderly parents of the ex-wife that was Deputy Cowling's arrest. Which turned out not to be true, which, or at least not sufficient enough to maintain the prosecution. So yes, I think that, again, plaintiff has a very difficult burden because I do think, as has been acknowledged, there've been some deficiencies in the complaint. But it is, again, problematic that you have one individual, one law enforcement department, eight different arrests, not a significant amount of time. It just seems problematic. Well, and in this case, Your Honor, in terms of the issues before, Your Honor, it really does boil down to when you look at each of these remaining four arrests of Deputy Gurgis, that was in August of 2019. Deputy Santana, that was in January of 2020. Deputy Riley, that was April of 2020. And Deputy Cowling, that was in May of 2020, two of which were pursuant to warrants, that they were all significantly different kinds of allegations brought by different people, whether it was a tenant of Mr. Hernandez or the parents of Mr. Hernandez's ex-wife, claiming different things. When the deputy arrives on scene, it's oftentimes that she-said-she-said situation. If there's a warrant and that's lawful, the deputy's entitled to arrest on that warrant. If it's a warrantless arrest, all the deputy needs is probable cause. And there's no requirement that the deputy independently investigate someone's allegation that I'm innocent or it wasn't me or I was misunderstood, things like that. Because that's what deputies deal with day in and day out. And if that were the test, that they had to just stop an arrest simply because somebody claimed it wasn't me or he hit me first, that would probably grind the wheels of the criminal justice system to a halt. Thankfully, the law does not put that onus on law enforcement. And that's why there's the rest of the criminal justice system. That's why we have judges and juries to listen to these claims to whether or not there was proof beyond a reasonable doubt. That onus is not put on these deputy sheriffs. And in this particular case, your honors are looking at the issue of whether or not the deputies are entitled to qualified immunity. And as it's stated in the briefs, the standard is whether or not there was arguable probable cause, which is even less than probable cause. I don't want to repeat myself, but two of these claims were 1983 malicious prosecution claims, which was for Deputy Riley and Deputy Cowling because there were warrants. The other two were, I'm sorry, two of them were malicious prosecution claims. That was Deputy Gurgis and Deputy Santana. The other two were 1983 false arrest claims for Riley and Cowling. Even though there are some different elements, it does all funnel down to the bottom line in this case. And that was whether there was arguable probable cause for each of these arrests. At this point, your honors, if you don't have any further questions for me, I would stand on the arguments in the answer brief as set forth. Thank you, counsel. Thank you. I had just a brief follow up on the Riley arrest because in fairness, and I think one of your honors pointed this out, there was a second basis for that arrest. And of course, we acknowledge that if there's probable cause for any offense, even if it's not charged, it would defeat a false arrest claim. But that charge was a resisting arrest without violence. And our allegations in the complaint is that once the state attorney's office reviewed the security footage of the encounter between Mr. Hernandez and Deputy Riley, the null profs soon followed. So our position would be not only was there no probable cause on the warrants issue, but there was also no or arguable probable cause on the second resisting arrest without violence. But you agree, though, that if we read the allegations and find that there is probable cause on the warrant, despite the null pros that was told, that that would defeat the false arrest claim, right? Correct. Again, arguable probable cause on any offense would defeat a false arrest claim. Right. But I just wanted to mention the second case. I appreciate that. Thank you. Thank you, counsel. Thank you.